1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRIAN FOWLER,                          No.  2:11-cv-0911  JAM AC P

12              Petitioner,

13        v.                                ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   W. KNIPP, Warden,

15              Respondent.

16

17

18        Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a

19   writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  This case proceeds on the original

20   petition, ECF No. 1.  Respondent has answered, ECF No. 15, and petitioner has filed a traverse.

21   ECF No. 18.  For the reasons set forth below, the undersigned recommends that the petition be

22   denied without an evidentiary hearing.

23   **I.      Procedural Background**

24        On March 16, 2006, petitioner was convicted by a jury in Solano County Superior Court

25   of three counts of committing a lewd act upon a child under the age of 14, one count of

26   aggravated sexual assault of a child, and indecent exposure.  I CT 252-257 (verdict forms).  The

27   two victims were petitioner's son and daughter.  Petitioner was sentenced to thirty years to life.

28

1

1  II CT 361-364[1] (Abstract of Judgment); VIII RT 1721-1723.[2]

2         Following his conviction, petitioner filed a direct appeal with the California Court of

3  Appeal raising two of the same claims presented in the instant federal habeas petition.  Petitioner

4  challenged the trial court's admission of the recorded interview of one of the victims as well as

5  the sufficiency of the evidence supporting his conviction under section California Penal Code §

6  288(a).  Compare ECF No. 1 at 60-71 (direct appeal opinion) with ECF No. 1 at 4-6 (identifying

7  federal habeas claims).[3]  On July 30, 2008, the California Court of Appeal affirmed petitioner's

8  convictions.  See People v. Fowler, 2008 WL 2917093 (Cal. App. July 30, 2008) (unpublished).

9  The California Supreme Court denied his petition for review on October 28, 2008.  ECF No. 1 at

10  73; ECF No. 15-2, Ex. 4.

11         On January 5, 2010, petitioner filed a state habeas petition in the Solano County Superior

12  Court raising the remaining six claims presented in the instant federal habeas petition.[4]  Petitioner

13  raised allegations of jury misconduct, a Brady violation, prosecutorial misconduct, the trial

14  court's abuse of discretion, and ineffective assistance of both trial and appellate counsel.  The

15  only two claims denied on the merits were petitioner's allegations that appellate counsel was

16  ineffective and that trial counsel was ineffective for failing to investigate matters that were not

17  discovered until after trial.  ECF No. 1 at 322.  The Superior Court found that appellate counsel's

18  performance was not objectively unreasonable and that petitioner failed to establish that trial

19  counsel "could have conducted an investigation prior to or during trial."  Id.  The court further

20  found that petitioner's claims concerning jury misconduct, a Brady violation, prosecutorial

21  misconduct, the trial court's abuse of discretion, Blakely error, and trial counsel's failure to file a

22  writ of prohibition/mandate were procedurally barred because they should have been raised on

23  direct appeal since they all "involve[d] matters on the record…."  ECF No. 1 at 321-322 (citing

24  _____

25  [1] "CT" refers to the Clerk's Transcripts lodged by the respondent in the instant case.
   [2] "RT" refers to the Reporter's Transcripts lodged by the respondent in the instant case.
26  [3] The pagination referenced herein is to the court's electronic copy of the parties pleadings
   available on the court's CMECF website.
27  [4] Neither petitioner nor respondent provided a copy of this state habeas corpus petition.
   Therefore, the court will rely on the Superior Court's order denying relief to explain what claims
28  it raised.

In re Dixon, 41 Cal.2d 756, 759 (1953)).  The remaining ineffective assistance of trial counsel claims failed to state a prima facie case for relief.  Id. at 322 (citing People v. Duvall, 9 Cal.4th 464, 474 (1995)).

Next petitioner filed a state habeas corpus petition in the California Court of Appeal which was denied, in a postcard denial with no citation to authority, on May 24, 2010.  ECF No. 1 at 324.  The California Supreme Court denied petitioner's habeas corpus application in a postcard denial without citation to authority on March 16, 2011.[5]  ECF No. 15-2, Ex. 5.

Petitioner filed the instant federal habeas corpus petition on April 5, 2011 raising the following grounds for relief: (1) a sufficiency challenge to the evidence supporting the conviction in count 1 for committing a lewd act upon a child; (2) juror misconduct; (3) a due process violation based on the prosecution's suppression of favorable evidence (i.e. a "Brady"[6] violation); (4) prosecutorial misconduct; (5) the trial court's abuse of discretion; (6) ineffective assistance of trial counsel; (7) ineffective assistance of appellate counsel; and (8) a Confrontation Clause challenge to the admission of the victim's pretrial recorded statements.[7]  ECF No.1 at 4-6.[8]

## II.  Factual Background

Petitioner expressly adopts the statement of facts as set forth by the California Court of Appeal, stating that any caveats are noted.  ECF No. 1 at 9.[9]

> Defendant has two children, D. and J.  At the time the charged offenses occurred (over a four-month period between September 2003 and January 2004), D. was eight years old and J. was six years old and they lived with their father in a house in Fairfield with two other adults, Don and Lori Turner.
>
> In April 2004, D. and J. went to live with their maternal aunt

---

[5] Respondent has only provided a copy of the Supreme Court docket sheet for the petition.
[6] Brady v. Maryland, 373 U.S. 83 (1963).
[7] For the court's convenience, petitioner's claims have been renumbered from his original petition.  The seventh and eighth claims presented in the original petition are duplicative.  Therefore, the court has addressed both of these claims as a single challenge to the admission of the victims' pretrial statements.
[8] Respondent has conceded that petitioner's claims have been exhausted in state court and are timely filed.  ECF No. 15 at 2.
[9] Petitioner makes no specific objection, however, to any of the facts recited by the state appellate court.  The state court's recitation of the facts is accorded a presumption of correctness here.  Thompson v. Runnels, 705 F.3d 1089, 1091 (9th Cir.), cert. denied, 134 S.Ct. 234 (2013).

Angelica and her husband Paul.  In July 2004, D. told Angelica that he "was forced by his father to go into the bathroom and play with his private."  He also told Angelica that "he and his sister had to do this not only in the bathroom, but the bedroom...."  J. also disclosed abuse by her father to Angelica.  She told Angelica that "her father would force her to play with her brother and herself...."  J. was very frightened when she disclosed this information.

Angelica called a social worker and, ultimately, a detective contacted her.  In September 2004, D. and J. were interviewed by law enforcement.  Both J. and D. were nervous and scared about having to go to the interview.

In October 2004, J. also disclosed to Angelica "[t]hat she had been sexually abused by her father.  That she had been raped."  She specifically told Angelica "that her dad would make her sit on his lap, and put his private in her private...."  Angelica passed this information on to Child Protective Services and ultimately to the detective working on the case.

The children were interviewed on videotape at the Rainbow Center.  J. was interviewed twice, and D. once.  These videotapes were played for the jury, [Footnote 2] over defendant's objection.

[Footnote 2] The jury was not provided with a transcript of the videotapes.

In J.'s interview, J. referred to both the female and male genitals as "privates," and stated that defendant made her and D. go into the bathroom, where D. took his clothes off and J. was forced to touch D.'s "private."  When this took place, defendant was in the bathroom, sitting on the toilet.  Defendant had them take a bath together, and look at each other's "privates."  After the bath, they got dressed and went into defendant's bedroom.  Defendant made them look at his penis.  J. stated that she did not remember anything else happening.  She denied that defendant touched her or that she was told to touch herself or defendant.  J. also was afraid of defendant.  She said she was told if she didn't talk about what had happened, defendant would get out of jail and she would have to go back to him and he would beat her and D.

When he was interviewed at the Rainbow Center, D. stated that his father made him and J. "look at each other."  He said that defendant called them into his room, told them to take off their clothes and to look at each other.  Defendant also had D. and J. go into the bathroom (which D. described as having "ten locks").  Defendant locked the door, sat on the toilet and directed J. to touch D.'s penis and then to touch her vagina with both her hands.  Later, defendant made them look at his penis while he touched it and they watched.  Defendant had D. leave the room.  J. stayed behind.  J. did not tell D. what happened in the bedroom.

In this interview, D. stated that the events he'd described occurred the day after he turned eight and continued every day until they moved from that house.  D. stated that the events occurred in the

4

bathroom and the bedroom every day, in the same way: defendant made the children take a bath, D. was forced to watch J. "play" with herself in the bath and J. put her fingers inside her vagina.

D. said he never heard defendant tell J. to touch D. or herself. Defendant also told him and J. not to tell anybody or he would beat them when he got out of jail.

J. was interviewed a second time several months later.  She described how defendant made her and D. take a bath together and brought them back into his bedroom, where defendant touched J.'s private and his private.  D. did not see what was happening because he was facing the door.  Defendant was "sitting on his knees."  J. described his penis as "hard" and "standing up."  J. was standing at the end of the bed, facing defendant.  Her feet were together.  She also stated that later she was on her knees.  Defendant put his private inside her private.  It hurt and she cried.  D. heard her cry. This event occurred only one time.

D. testified at trial.  D. described living in a house in Fairfield with his father, J. and two other adults.  It was October 2003.  His mother was not around. D. did not like his father, who hit him with belts, metal hangers, and shoes.  D. often had bruises on his face and legs.  Defendant also hit D.'s sister, J.  He yelled at D. in a "mean voice" and told him not to tell anyone that he hit them.

More than five times, but less than ten times, defendant had J. and D. undress, take baths together and look at each other's privates. Defendant also made J. touch D.'s "private."

D. testified that, after defendant abused them in the bathroom, he spent time alone with J. J. told D. that during this time, defendant made her touch herself on her "private." J. always looked sad when she came out of defendant's bedroom.  D. did not remember telling anyone that he had to look at defendant's private part.  D. did not tell anyone about these events because he was afraid of defendant.

J., who was eight years old at the time of trial, testified that, from the time she was three or four years old, she lived with her father. She didn't get along well with her father because he was "really mean" and would hurt her, spank her hard with his belt and his hands, and yell at her.  This happened when they were living with his friends, Lori and Dan.

J. testified that her father made her feel uncomfortable because "he would tell me to put my clothes in his bedroom, and then he would make me and D[.] take a bath together, and I didn't like that at all." Her father "would just push us in the bathroom until we fell."  Her father would tell her to take off her clothes and if she didn't he "would spank us really, really hard, and we didn't want that to happen so we listened to him."

When they were in the bathtub her father would watch.  J. testified that he did not make her do anything else while she was in the bathroom and he did not make her brother do anything.

5

J. recalled being interviewed at the Rainbow Center a long time ago, and remembered "talking about the things that happened" while she lived with her father.  She did not remember talking about "hold[ing her] brother's private."  She stated it was difficult to be in court, and that she did not really want to be there.

J. testified that nothing else happened in the bathroom and that she "would have to go" into her father's bedroom after bathing and get dressed.  She denied that anything happened in the bedroom, and stated that she did not remember being in the room without D.  She did not remember her father doing anything to her in his room or talking about it at the Rainbow Center.

She stated that her father was wearing his clothes when she was in his room, and that she didn't see him naked, except once at his girlfriend's house when she accidentally saw his "private" under his robe, and she looked away.

J. testified that she was afraid of her father, and that her greatest fear while she was testifying was "[l]ooking at him and being near him."

J. was examined by two sexual assault nurse examiners in December 2004.  She told both nurses that "'[d]addy put his pee in my private.'"  She told them it hurt when his penis penetrated her.

One of the nurses did not notice anything unusual during her examination of J.'s hymen and surrounding genitalia.  The other noticed thickened edges and notches on the hymen, abnormal findings that are consistent with penetration.  The same nurse concluded that J.'s hymen was abnormal and that something had penetrated and disrupted the edge of the hymen.

Lori Turner, whose house defendant lived in while the alleged abuse took place, testified for the defense.  She stated that the walls of the room were thin, and that defendant's room did not have a door.  She heard D. and J. cry when they were spanked, and [sic] that neither child told her about sexual abuse, used sexually explicit terms or acted out in a sexual way.

Angelica, D. and J.'s aunt, also testified that D. and J. were only able to live with her for about a year because J. pinched her baby and also lied.  D. also pinched the baby.  J. was incontinent, touched her private parts and denied having done so.  D. spread feces on the floor and carpet, stole things from school, and lied about what had occurred while they lived with Angelica.

Angelica also described an incident of sexual acting out between D. and J.  J. was on top of D. during a game of "dog pile" and Angelica observed J. bouncing up and down on D. as though having intercourse.  Angelica also observed J. touching D.'s penis and buttocks.

J. and D. were both afraid to go back and live with their father.  J. told Angelica that she would live with her father again " 'if he

1    doesn't do those things again.' "

2    Several experts testified for the defense.  Dr. James Crawford, the
     medical director of the Center for Child Protection at Children's
3    Hospital in Oakland, testified that the records he had been given of
     J.'s sexual assault examination revealed no evidence of prior
4    physical injury or penetration.  Dr. Michael Kania, a clinical and
     forensic psychologist, testified, after reviewing the videotapes of D.
5    and J.'s interviews, that D. and J. were asked leading questions and
     supplied with details that affected their answers.

6

7    People v. Fowler, A115550, 2008 WL 2917093 at *1 - *4 (Cal. Ct. App. July 30, 2008) (unpub.).

8    **III.    Standards of Review**

9        In order to determine the appropriate standard of review, the court looks to the last

10   reasoned state court decision on each of petitioner's claims for relief.  Robinson v. Ignacio, 360

11   F.3d 1044, 1055 (9th Cir. 2004); Ylst v. Nunnemaker, 501 U.S. 797 (1991).  While respondent

12   completely fails to identify the last reasoned state court opinion adjudicating any of petitioner's

13   claims, the court has determined that the California Court of Appeal decision is the last reasoned

14   state opinion regarding those claims raised on direct appeal.  The Solano Superior Court's denial

15   of state habeas relief constitutes the last reasoned state court opinion on the claims raised on state

16   habeas.

17       A.    De Novo Review

18       In Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011), the Supreme Court stated that

19   "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it

20   may be presumed that the state court adjudicated the claim on the merits in the absence of any

21   indication or state-law procedural principles to the contrary."  Likewise, in Johnson v. Williams,

22   133 S. Ct. 1088, 1096 (2013), the Court concluded that "[w]hen a state court rejects a federal

23   claim without expressly addressing that claim, a federal habeas court must presume that the

24   federal claim was adjudicated on the merits—but that presumption can in some limited

25   circumstances be rebutted."  However, when it is clear that a state court did not reach the merits

26   of petitioner's constitutional claim, de novo review is appropriate because there is simply nothing

27   to which a federal court could defer under the AEDPA.  See Cone v. Bell, 556 U.S. 449, 472

28   (2009).  That is the case where, for example, a claim is denied on the exclusive basis of a state

7

1  procedural rule. Id. at 464-66, 472.[10]

2      In the instant case, as noted above, the superior court denied the following claims on

3  purely procedural grounds:  juror misconduct; prosecutorial misconduct, including Brady; trial

4  court's abuse of discretion; and a single instance of ineffective assistance of trial counsel.  The

5  higher state courts are presumed to have adopted this basis for decision.  Ylst, 501 U.S. 797.  No

6  state court adjudicated those issues on the merits.  Accordingly, these claims must be reviewed

7  here de novo.

8      B.    Review Under the AEDPA

9      The remaining claims for relief are governed by the AEDPA.  28 U.S.C. § 2254, as

10  amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in

11  relevant part as follows:

12          (d) An application for a writ of habeas corpus on behalf of a person
            in custody pursuant to the judgment of a state court shall not be
13          granted with respect to any claim that was adjudicated on the merits
            in State court proceedings unless the adjudication of the claim –
14

15              (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
            determined by the Supreme Court of the United States; or
16

17              (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
            State court proceeding.
18

19      Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a

20  state prisoner's application for a writ of habeas corpus."  Williams v. Taylor, 529 U.S. 362, 412

21  (2000).  It does not, however, "imply abandonment or abdication of judicial review," or "by

22  definition preclude relief."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  If either prong

23  (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of

24  constitutional error.  See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

25      A state court decision is "contrary to" clearly established federal law if the decision

26  [10] In Cone the state court had denied relief on state law procedural grounds, a ruling that the
    respondent then asserted as a procedural defense in federal habeas.  The Supreme Court held first
27  that the claim was not procedurally defaulted, and second that de novo review applied in federal
    habeas because the claim had not been adjudicated on the merits in state court.  In the instant
28  case, the state has not asserted procedural default as a defense.  ECF No. 15 at 2:9-10.

1    "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S. at

2    405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion,

3    or alteration of a factor in a test established by the Supreme Court also constitutes a failure to

4    apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." Benn v.

5    Lambert, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).

6        A state court decision "unreasonably applies" federal law "if the state court identifies the

7    correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the

8    particular state prisoner's case." Williams, 529 U.S. at 407-08. It is not enough that the state

9    court was incorrect in the view of the federal habeas court; the state court decision must be

10    objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). State court decisions

11    can be objectively unreasonable when they interpret Supreme Court precedent too restrictively,

12    when they fail to give appropriate consideration and weight to the full body of available evidence,

13    and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397-98;

14    Wiggins, 539 U.S. at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v.

15    McCollum, 130 S. Ct. 447, 454 (2009).

16        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

17    principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538

18    U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established

19    Federal law," but circuit law has persuasive value regarding what law is "clearly established" and

20    what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597,

21    600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

22        Relief is also available under AEDPA where the state court predicates its adjudication of a

23    claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits

24    this inquiry to the evidence that was before the state court. Even factual determinations that are

25    generally accorded heightened deference, such as credibility findings, are subject to scrutiny for

26    objective reasonableness under § 2254(d)(2). See, e.g., Miller-El v. Dretke, 545 U.S. 231, 240

27    (2005) (rejecting credibility finding as unreasonable in light of the evidence before the state

28    court).

1    Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review

2    is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738

3    (emphasis in original). A different rule applies where the state court rejects claims summarily,

4    without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court

5    denies a claim on the merits but without a reasoned opinion, the federal habeas court must

6    determine what arguments or theories may have supported the state court's decision, and subject

7    those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

8    In this case, the California Court of Appeal denied petitioner's constitutional challenge to

9    the admission of the victim's pretrial statements, and the sufficiency of the evidence supporting

10   count one, in a reasoned opinion on direct appeal. See ECF No. 1 at 60-71 (direct appeal

11   opinion). Therefore, these claims are reviewed under AEDPA's deferential standard. The Solano

12   County Superior Court also denied relief in a reasoned, albeit terse, opinion rejecting petitioner's

13   claim that trial counsel failed to investigate matters that were not discovered until after trial and

14   his ineffective assistance of appellate counsel claims. See ECF No. 1 at 322. This court will

15   therefore determine whether the Superior Court's determination was contrary to or an

16   unreasonable application of clearly established federal law.

17   The last reasoned state court opinion denying petitioner's remaining two ineffective

18   assistance of trial counsel claims summarily denied relief, without a reasoned opinion, but with

19   citation to People v. Duvall, 9 Cal.4th 464, 474 (1995). ECF No. 1 at 322. This citation

20   indicates that the petition was denied for failure to allege facts that were sufficient to state a

21   claim. Duvall, 9 Cal.4th at 474 (discussing petitioner's "initial burden of pleading adequate

22   grounds for relief"); Pinholster, 131 S. Ct. at 1402 n. 12 (recognizing that California summary

23   denial indicates failure to state a prima facie case, citing Duvall). Accordingly, the determination

24   this court must review for objective reasonableness under § 2254(d)(1) is the state court's holding

25   that petitioner failed to state a prima facie case of a constitutional violation. See Nunes v.

26   Mueller, 350 F.3d 1045, 1054–55 (9th Cir. 2003), cert. denied, 543 U.S. 1038 (2004).

27   ////

28   ////

10

**IV.    Insufficient Evidence to Support Conviction on Count 1**

Because petitioner's claim of insufficient evidence constitutes a running theme in the petition as well as a discrete claim for relief, and because analysis of several other claims requires consideration of the trial evidence as a whole, the court addresses this claim first.  The evidence presented at petitioner's trial regarding the sexual abuse charges is detailed above.  At trial the children also testified that they had been physically abused in the home of Angelica and Paul De Lima, the aunt and uncle with whom they lived after the alleged sexual abuse by petitioner.[11]  At trial the defense argued that the testimony regarding abuse by the De Limas was false, and reflected adversely on the children's credibility.  In habeas, petitioner contends that Paul De Lima did abuse the children, sexually as well as physically, and that this fact is exculpatory as to petitioner.

A.    Petitioner's Allegations

Petitioner challenges the sufficiency of the evidence supporting his conviction on Count I, arguing that the record is devoid of any evidence that he compelled J. to touch her vagina because she could not recall this at trial.

B.    Standard Applicable on Habeas Review

As explained more fully above, this claim was adjudicated on direct appeal and thus AEDPA deference applies.

C.    Clearly Established Law Standard Governing Sufficiency Challenges

The prosecution in a criminal case has the burden of proving each and every element of the crime charged beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order to grant a writ of habeas corpus under AEDPA, the court must find that the decision of the state court reflected an

---

[11] D. testified that his uncle beat him, choked him until he passed out, stapled him to a wall by his shirtsleeves, and tried to drown J.  J. made similar allegations.

11

1    objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.  <u>Juan H</u>, 408

2    F.3d at 1274.  The federal habeas court determines the sufficiency of the evidence in reference to

3    the substantive elements of the criminal offense as defined by state law.  <u>Jackson</u>, 443 U.S. at 324

4    n.16; <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004).

5              D.       <u>Analysis</u>

6              On direct appeal, the state court rejected this claim by finding that "D.'s testimony is

7    substantial evidence that defendant forced J. to touch herself."  <u>See</u> ECF No. 1 at 69-70.  It

8    pointed out that during his interview at the Rainbow Center, D. indicated that his sister told him

9    that petitioner forced her to "play with her private."  <u>Id.</u>  At trial, D. testified that he wasn't sure,

10   but he still thought that his sister had been forced to touch her private part by petitioner.  <u>Id.</u>

11   Although J. did not report this particular form of abuse to an adult, describe it during the

12   videotaped interview, or testify to it at trial, D.'s testimony was sufficient under California law to

13   establish that defendant violated Penal Code § 288(a) by (1) willfully caused J. to touch her own

14   body; (2) with the intent of arousing, appealing to or gratifying the lust, passions, or sexual

15   desires of himself or the child; and (3) that J. was under the age of 14 at the time of the crime.

16            Here, petitioner's challenge to the sufficiency of the evidence boils down to a credibility

17   assessment of D.'s testimony, which petitioner concedes in his traverse.  ECF No. 18 at 5.

18   However, a jury's credibility determination is not subject to re-litigation during post-conviction

19   proceedings.  <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("under <u>Jackson</u>, the assessment of the

20   credibility of witnesses is generally beyond the scope of review.").  The state court held that

21   "[a]lthough brief, D.'s testimony is substantial evidence that defendant forced J. to touch herself."

22   ECF No. 1 at 70.  This conclusion is not unreasonable in light of clearly established federal law.

23            To the extent petitioner means to argue that D.'s testimony on this issue is fatally

24   unreliable and therefore insufficient to support the verdict because of its hearsay nature, this

25   presents a federal constitutional question only to the degree that the Confrontation Clause is

26   implicated.  As the court discusses more fully below regarding petitioner's challenge to admission

27   of the videotapes, there is no confrontation problem where the declarant is present and testifies.

28   <u>Crawford v. Washington</u>, 541 U.S. 36, 59 n.9 (2004).  Both children were present and testified,

1    and were subject to examination regarding the fact, contents, and meaning of alleged prior

2    statements.  Accordingly, there was no constitutional prohibition on the jury's consideration of

3    D.'s testimony.  Any errors of state law in the admission of the children's pretrial statements, as

4    prior inconsistent statements or on other grounds, do not state cognizable claims for federal

5    habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e have repeatedly held

6    that 'it is not the province of a federal habeas court to reexamine state-court determinations on

7    state-law questions.'").

8         In sum, petitioner does not contend that there was no evidence provided by D. on this

9    issue, he merely challenges the weight which the jury accorded it.  This court will not reweigh a

10   jury's credibility assessment from a cold record.  Therefore, state court's application of the

11   Jackson standard was not objectively unreasonable in light of the jury's determination that D.'s

12   testimony was credible.

13   **V.    Juror Misconduct**

14        A.    Petitioner's Allegations

15        Petitioner raises three sub-claims involving juror misconduct.  The first sub-claim is based

16   on alleged inappropriate interaction between a Juror No. 12 and the bailiff.  Secondly, petitioner

17   alleges that he was prejudiced by the trial court's failure to remove Juror No. 4.  Lastly, petitioner

18   claims that some jurors determined he was guilty before the case was submitted to them, thereby

19   engaging in premature deliberations.  According to petitioner, the trial court's failure to hold an

20   evidentiary hearing on these issues further denied him a fair trial.  ECF No. 1 at 20-22.

21             1.  Sub-Claim #1:  Inappropriate Interaction Between the Bailiff and Juror No. 12

22        Petitioner first contends that a member of the jury interacted inappropriately with the

23   bailiff, the circumstances of which are set forth in a letter petitioner wrote to the trial judge.  ECF

24   No. 1 at 226.  In the letter, petitioner claims that the bailiff allowed the jury foreperson, Victoria

25   Walters, to call the jury and to have a junior deputy badge, and that petitioner heard Ms. Walters

26   state that she had brought the bailiff sandwiches.  ECF No. 1 at 9, 225-226.

27             2.  Sub-Claim #2:  Alleged Bias of Juror No. 4

28        Juror No. 5 was removed during trial after making inappropriate case-related comments to

13

1  Juror No. 4.  Petitioner challenges the trial court's failure to also remove Juror No. 4.

2  On the morning of February 28, 2006, after the jury had heard two days of testimony,

3  Juror No. 4 submitted a note informing court that another juror had discussed the case with him

4  during a recess.  IV RT at 623-634.  Juror No. 4 informed the trial court that the other juror had

5  stated:  "Like my daddy used to say, it's a shame a girl's got to be deflowered, but somebody has

6  got to do it."  IV RT at 625.  In response, Juror No. 4 just walked away.  Id.  Following this

7  disclosure, the trial judge briefly questioned Juror No. 4.  Juror No. 4 identified the juror who

8  made the statement as Juror No. 5, and stated that no other juror had been present when the

9  statement was made.  Id. at 624-26.  No counsel sought to ask questions of Juror No. 4 after the

10  trial court had questioned him.  Id.

11  The court then separately questioned Juror No. 5 who admitted to having made a remark

12  "to that effect."  IV RT at 626-630.  When the trial judge reminded him that jurors had been

13  advised not to make any comment or express any opinion "on any subject matter touching this

14  trial," Juror No. 5 stated that he had been "just trying to make a joke," conceding that "it was in

15  poor taste."  Id. at 627.  Juror No. 5 also stated that he had prefaced the remark by commenting

16  that he had "never heard that much information about hymens before in my life," referring to

17  lengthy testimony on the subject ("almost eight hours about genitalia and female anatomy").  Id.

18  at 626-27.  He explained that he thought the "joke" about "deflowering virgins" was

19  "appropriate" in that context.  Id. at 627.  Juror No. 5 insisted he had not made a decision in the

20  case yet, and was "still listening to all the evidence."  Id. at 630.

21  Defense counsel requested that Juror No. 5 be removed because his joke indicated he did

22  not take the matter seriously; the juror had initially indicated that he had formed an opinion about

23  the case; and because he might have some animosity about having been singled out and

24  questioned.  IV RT at 631-32.  The prosecutor did not seek removal of Juror No. 5 because she

25  felt his answers to the questioning had been "forthright and honest in details," and because he had

26  not yet formed an opinion as to the facts of the case.  Id. at 631.  Ultimately, the trial court

27  decided to replace Juror No. 5 with an alternate, finding his comment "appalling," and suggesting

28  that Juror No. 5 had begun to form an opinion about whether there had been trauma or damage to

the victim's hymen.  Id. at 632.  The court was also concerned that Juror No. 5 would likely know who had reported his comment.  Id. at 632-33.

There was no request by either counsel to remove Juror No. 4.  IV RT 623-634.  Petitioner, however, argues that the removal of Juror No. 5 did not eliminate the prejudice because Juror No. 4 was "fully privy to the misconduct" and thereby also tainted.  ECF No. 1 at 10, 20.  Petitioner argues that Juror No. 4 implied the interaction involved only a quick comment, but Juror No. 5 revealed during the hearing that "it was an explicit and detailed joke directly relating to the evidence presented at that point in the trial."  Id. (citing [IV] RT 624-634).  Due to this single discrepancy, petitioner argues that the trial court erred in failing to sua sponte remove Juror No. 4.

### 3.  Pre-Deliberation Discussions of Guilt

In his third sub-claim, petitioner submits an affidavit from his mother, Carol Gadow, alleging that several jurors engaged in premature deliberations.  At the sentencing hearing, petitioner's mother spoke with a juror who indicated that members of the jury had been discussing petitioner's "'guilt' well before the evidence was submitted to them and well before the defense had even begun to present its case."  ECF No. 1 at 10, 121-22.  Juror Prenton told her "that some of the jurors" thought petitioner "was guilty" based on the nature of the charges even before they saw the videotapes.  Id. at 121-122.

### B.    Standard Applicable to Habeas Review

Because the state court denied this claim on procedural grounds and did not reach the merits, AEDAP standards do not apply and this court will conduct a de novo review.

### C.    Governing Legal Principles: Juror Misconduct

The Sixth Amendment guarantees a criminal defendant a fair trial by a panel of impartial, indifferent jurors.  Irvin v. Dowd, 366 U.S. 717, 722 (1961); Tinsley v. Borg, 895 F.2d 520, 523 (9th Cir.1990).  An unbiased jury is a basic requirement of due process.  In re Murchison, 349 U.S. 133, 136 (1955).  A single juror's improperly influenced vote deprives a defendant of an unprejudiced, unanimous jury.  See Parker v. Gladden, 385 U.S. 363, 366 (1966).

Impartiality, however, does not require a lack of any preconceptions about the defendant

1  or the case.  "To hold that the mere existence of any preconceived notion as to the guilt or

2  innocence of an accused, without more, is sufficient to rebut the presumption of a prospective

3  juror's impartiality would be to establish an impossible standard."  Irvin, 366 U.S. at 723.  A

4  presumption of impartiality applies if jurors provide assurances that they can "lay aside [their]

5  impression or opinion and render a verdict based on the evidence presented in court."  Murphy v.

6  Florida, 421 U.S. 794, 800 (1975).  This presumption is overcome only where the defendant can

7  demonstrate that a juror actually held a biased opinion, or that the community is so inflamed with

8  prejudicial sentiment that a fair trial is impossible.  Id. at 800-803.

9        Moreover, "not every incident of juror misconduct requires a new trial."  United States v.

10  Klee, 494 F.2d 394, 396 (9th Cir.1974).  "The test is whether or not the misconduct has

11  prejudiced the defendant to the extent that he has not received a fair trial."  Id.  On collateral

12  review, if misconduct has occurred, a petitioner must "show that the alleged error 'had a

13  substantial and injurious effect or influence in determining the jury's verdict.'"  Jeffries v.

14  Blodgett, 5 F.3d 1180, 1190 (9th Cir.1993) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637

15  (1993)).

16        D.      Analysis

17             1.  Interaction Between Bailiff and Juror No. 12

18        Petitioner's allegations concerning the interaction between Juror No. 12 and the bailiff do

19  not rise to the level of juror misconduct.  Indeed, petitioner does not explain how the interaction

20  he alleges had any impact on the verdict in his case.  This is not a situation where the bailiff made

21  any statements concerning defendant's guilt or innocence, or even commented on the evidence

22  presented at trial.  Compare Parker v. Gladden, 385 U.S. 363, 364-65 (1966) (finding a bailiff's

23  comment to at least one juror or alternate that the defendant was guilty violated the petitioner's

24  Sixth Amendment right to confrontation and cross-examination);  Dickson v. Sullivan, 849 F.2d

25  403, 405, 407 (9th Cir. 1988) (concluding that a deputy sheriff's pre-deliberation comment to two

26  jurors that the defendant had "done something like this before" would lead rationally to the

27  conclusion that defendant "had done 'this' again.").  This case is more akin to United States v.

28  Smith, 424 F.3d 992 (9th Cir. 2005), where a month after the verdicts were returned a juror wrote

16

1   a letter to a prosecution witness indicating a romantic interest. Id. at 1011-12. The district court

2   did not hold an evidentiary hearing in Smith, and denied the motion for a new trial based on the

3   alleged bias of the juror. Id. at 1012-13. The Ninth Circuit affirmed, noting that it was unlikely

4   that the juror was trying to impress the prosecution witness by finding the defendants guilty. Id.

5   at 1012. Here, there is nothing in the record demonstrating that the interactions concerned "the

6   matter pending before the jury." Remmer, 347 U.S. at 229. Accordingly, the trial court did not

7   err in failing to remove Juror No. 12 and the undersigned recommends denying relief on this

8   claim.

9            2. Alleged Bias of Juror No. 4

10      The undersigned finds that petitioner was not prejudiced by the trial court's failure to

11   remove Juror No. 4, because the circumstances do not support a finding that Juror 4 was biased.

12   Juror No. 4 was on the receiving end of an offensive comment that he did not endorse in any way.

13   Juror No. 4 simply walked away upon hearing the comment, and promptly reported it to the

14   judge. He did not respond verbally to Juror No. 5 and did not act in any manner that would

15   suggest that he was biased against petitioner. In fact, his response to the offensive remarks

16   suggests that Juror No. 4 understood his duty to be impartial and not comment on the evidence

17   prior to deliberating. Moreover, Juror No. 4's failure to separately detail Juror No. 5's comment

18   about the extensive testimony regarding hymens does not indicate that he was influenced by that

19   comment. Petitioner points to no facts or circumstances indicating "a reasonable possibility that

20   the extrinsic material could have affected the verdict," such that he is entitled to a new trial based

21   on this incident. United States v. Vasquez, 597 F.2d at 193. Therefore, this sub-claim should be

22   denied.

23            3. Pre-Deliberation Discussions of Guilt

24      The trial court denied petitioner's motion for a new trial based on the alleged premature

25   deliberations of several jurors, noting that no juror had provided a declaration supporting

26   petitioner's mother's allegation of misconduct. VIII RT 1708-1709. The trial court also found

27   that there was no way to determine when the alleged misconduct took place, observing that if the

28   alleged comments had been made during deliberations, an inquiry would invade the deliberative

1   process. Id. at 1709.

2   Petitioner concedes it is not mandatory for a trial court to hold an evidentiary hearing to

3   ascertain whether allegations of juror misconduct are true or false. However, citing United States

4   v. Navarro-Garcia, 926 F.2d 818, 823 (9th Cir. 1991), he argues that a trial court abuses its

5   discretion when an evidentiary hearing regarding juror misconduct is denied simply because the

6   evidence of misconduct is presented in the form of an affidavit containing hearsay.[12]  Petitioner

7   argues that his mother's affidavit, like the declaration supporting an evidentiary hearing request in

8   Navarro-Garcia, made a sufficient showing of misconduct that an evidentiary hearing should have

9   been held. See ECF No. 1 at 20-21. Petitioner's argument presents two distinct grounds for

10  relief: (1) the trial court's failure to conduct an evidentiary hearing; and (2) the separate and

11  independent claim that reversal of his conviction is warranted, notwithstanding the failure to hold

12  an evidentiary hearing, based on the jurors' premature deliberations. The court will review each

13  subclaim in turn.

14  Although preferable, "[a]n evidentiary hearing is not mandated every time there is an

15  allegation of jury misconduct or bias." United States v. Montes, 628 F.3d 1183, 1187 (9th Cir.

16  2011) (quoting United States v. Angulo, 4 F.3d 843 at 847 (9th Cir. 1993)). "Rather, in

17  determining whether a hearing must be held, the court must consider the content of the

18  allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source."

19  United States v. Smith, 424 F.3d at 1011. In this case, the undersigned does not find that the trial

20  court erred in failing to conduct an evidentiary hearing. The type of misconduct alleged suggests

21  that an evidentiary hearing was not necessary in this case. See Grotemeyer v. Hickman, 393 F.3d

22  871, 881 (9th Cir. 2004) (finding that "[b]ecause no impermissible extrinsic evidence was

23  discussed, the state court did not act improperly by denying the motion for a new trial without

24  holding an evidentiary hearing."). As the Ninth Circuit Court of Appeal has explained, premature

25  jury deliberations "though not necessarily proper,... [are] not as serious as 'private

26  ───────────────

27  [12] In Navarro-Garcia, which addressed the standards for an evidentiary hearing in district court,
defense counsel submitted an affidavit stating that a juror had reported following the return of the
verdict that another juror had conducted an experiment during a recess, and has communicated
28  the results of the experiment to the jury as a whole.

1   communication, contact, or tampering ... with a juror during a trial [or] ... influence of the press

2   upon the jury,' nor does 'every incident of juror misconduct require[ ] a new trial.'" Davis v.

3   Woodford, 384 F.3d 628, 653 (9th Cir. 2004) (quoting United States v. Klee, 494 F.2d 394, 396

4   (9th Cir. 1974) (internal citations and quotation marks omitted), cert. dismissed sub nom. Davis v.

5   Brown, 545 U.S. 1165 (2005)).

6          Here, in considering whether a hearing was required, the trial court also noted that there

7   were no affidavits from any actual jurors supporting the allegations raised in petitioner's mother's

8   affidavit.  In this vein, the trial court appropriately considered the source of the information which

9   was a member of petitioner's own family rather than a member of the Bar or an affected juror.

10  See United States v. Smith, 424 F.3d at 1011.  Furthermore, the declaration was specific only as

11  to the time and place of the mother's communication with a juror and not regarding the actual

12  substance of the juror's remarks.  Accordingly, the factual content of the declaration was

13  insufficient to warrant an evidentiary hearing.  For all these reasons, the undersigned finds that

14  the trial court's failure to hold an evidentiary hearing regarding juror misconduct was not

15  erroneous.  It certainly did not violate any of petitioner's constitutional rights.

16         As to the specific allegation of jury misconduct in violation of the Sixth Amendment, the

17  most that petitioner's mother's affidavit establishes is that an unknown number of jurors

18  expressed a pre-conceived notion of petitioner's guilt based on the specific charges involved.

19  Even assuming the contents of the affidavit were admissible, the trial court's conclusion that

20  additional testimony on the issue would have improperly invaded the thought processes of the

21  jury was entirely correct.  The same principles apply in this court, and would prevent further

22  development of the facts.  See United States v. Pimentel, 654 F.2d at 542 (stating that

23  "[t]estimony of a juror concerning the motives of individual jurors and conduct during

24  deliberations is not admissible."); see also Fed. R. Evid. 606(b).  This case is similar to United

25  States v. Davis, 960 F.2d at 828, in which the Ninth Circuit concluded on direct review that a

26  juror's affidavit stating that he knew the defendant was guilty from the first day was insufficient

27  to set aside a conviction based on juror misconduct.  Here, petitioner has presented no evidence

28  that any juror refused to set any preconceived notions aside and render a verdict based on the

1  evidence as they were instructed to do.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987)

2  (applying "the almost invariable assumption of the law that jurors follow their instructions").

3  Accordingly, the undersigned finds that there was no juror misconduct in petitioner's case and

4  that this claim should be denied.[13]

5  **VI.**   **Brady** **Violation**

6         A.      Petitioner's Allegations

7         Petitioner's Brady claim is based on the prosecutor's failure to disclose Suisun City Police

8  Report Number 04-3496.  Even though petitioner still does not have access to this report, he

9  asserts that it contains allegations that Eliseu Paulo De Lima, the victims' uncle and foster parent,

10 physically and sexually abused them.  Petitioner suggests in various pleadings that the victims'

11 uncle was the true perpetrator of any sexual abuse that the victims suffered, and that the police

12 report detailing his crimes was exculpatory evidence in petitioner's criminal case.  Had the jury

13 heard this evidence, petitioner maintains, it would have bolstered his argument that the claims

14 against him were fabricated and would likely have changed the outcome.

15        B.      Standard Applicable to Habeas Review

16        This claim also requires de novo review as the state court denied relief on procedural

17 grounds and did not adjudicate the merits.

18        C.      Applicable Legal Standard

19        A Brady violation has three components: "[t]he evidence at issue must be favorable to the

20 accused, either because it is exculpatory, or because it is impeaching; that evidence must have

21 been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

22 Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Banks v. Dretke, 540 U.S. 668, 691

23 (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005).  In order to establish prejudice,

24 petitioner must demonstrate that "'there is a reasonable probability' that the result of the trial

25 would have been different if the suppressed documents had been disclosed to the defense."

26 Strickler, 527 U.S. at 289.  "'The question is not whether the [petitioner] would more likely than

27

28 [13] The court therefore finds it unnecessary to determine whether any prejudice resulted from the
   juror misconduct.  See Brecht v. Abrahamson, 507 U.S. 619 (1993).

20

1    not have received a different verdict with the evidence, but whether in its absence he received a

2    fair trial, understood as a trial resulting in a verdict worthy of confidence.'"  Id. (quoting Kyles v.

3    Whitley, 514 U.S. at 434).  Once the materiality of the suppressed evidence is established, no

4    further harmless error analysis is required.  Kyles, 514 U.S. at 435-36; Silva, 416 F.3d at 986.

5            D.      Analysis

6            Petitioner's claim fails for two reasons.  First, petitioner has not demonstrated that the

7    police report was actually suppressed by the prosecution in this case.  Both the prosecutor and

8    defense counsel became aware of the allegations against the uncle based on a limited release of

9    information contained in the victims' mental health records that were subpoenaed by defense

10   counsel.  The record demonstrates that the prosecution told the court and defense counsel that she

11   had requested police reports after the testimony about abuse by the uncle.  V RT at 1028.

12   Moreover, a letter that petitioner wrote to his trial attorney in March of 2006 indicated that both

13   he and his attorney were aware during trial that there might be a police report concerning his

14   children's claims of abuse by their uncle.  ECF No. 1 at 11, 24, 235; ECF No. 18 at 4.  In the

15   2006 letter, petitioner states he had been "under the impression" his counsel would follow up to

16   obtain any such report.  He then indicates that he has just learned the report number and asks that

17   she obtain the document.  Since counsel for the defense was at least aware of the existence of

18   such a report during trial, it does not constitute suppressed evidence.  "[I]f the means of obtaining

19   the exculpatory evidence has been provided to the defense, the Brady claim fails."  United States

20   v. Dupuy, 760 F.2d 1492, 1502 n. 5 (9th Cir. 1985) (citing United States v. Shelton, 588 F.2d

21   1242, 1250 (9th Cir.1978)).  "In the end," as Justice White has said, "any allegation of

22   suppression boils down to an assessment of what the State knows at trial in comparison to the

23   knowledge held by the defense."  Dupuy, 760 F.2d at 1502 n. 5 (quoting Giles v. Maryland, 386

24   U.S. 66, 96 (1967) (White, J., concurring).  In this instance, there is no evidence that the

25   prosecution had any more information than defense counsel already had about the allegations of

26   abuse by the victims' uncle.

27          Even assuming the police report was suppressed by the prosecution, there is no reasonable

28   probability that the outcome of the trial would have changed had it been produced.  See Strickler,

527 U.S. at 289.  There was extensive cross-examination of the victims by defense counsel concerning their uncle's alleged physical abuse.  See II RT at 267-287; 333-340; 343-344; 351-52.  Dominick stated, among other things, that his uncle had choked and slapped him, had stapled him by his jacket sleeves to a garage door, and that he wanted his uncle to go to jail.  II RT 267-287.  Jessica testified that the abuse involved both her aunt and uncle, recounting alleged incidents of having been bruised by choking, kicking, punching and near-drowning.  RT at 333.  With this background in mind, it is difficult to discern how a police report regarding any such allegations would have assisted the defense.  Evidence is material under Brady "'when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'"  Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) cert. denied, 133 S. Ct. 2766 (2013) (quoting Cone v. Bell, 556 U.S. 449, 469-70 (2009) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).  Petitioner does not demonstrate that the children's unsubstantiated claims against their uncle would have undermined their separate and distinct allegations against petitioner, which involved acts that occurred during an earlier time period.

For these two separate and distinct reasons, the undersigned recommends denying petitioner's Brady claim.

## VII.    Other Prosecutorial Misconduct

A.    Petitioner next contends that the prosecutor engaged in misconduct based on her improper cross-examination of witness Angelica De Lima as well as her improper closing argument.  ECF No. 1 at 11-12, 25-26.

### 1.  Improper Questions to Witness De Lima

Petitioner first faults the prosecutor in her efforts to impeach defense witness Angelica De Lima, the children's aunt, by using what petitioner characterizes as false evidence.[14]  This false evidence was a police report involving a complaint of domestic abuse made by Angelica De Lima against Paul De Lima in Napa, California in 2000.  Petitioner argues that the prosecutor did not have a good faith basis to ask about this domestic violence report because it was not in the

---

[14] Ms. De Lima testified that both children lied and exhibited disturbed behavior when they lived with her.

husband's full name of Eliseu Paulo De Lima and contained a different date of birth.  ECF No. 1 at 11-12, 25-26; V RT at 857-858 (cross-examination by prosecutor); V RT 1026-1031 (objection by defense); V RT 1029-30 (trial court's ruling); VIII RT 1522-1529 (defense objection to curative instruction).

A review of the record indicates that the prosecutor had the following exchange with Ms. De Lima during her cross-examination of the witness:

> BY [Prosecutor] MS. ABRAMS:
> Q.  Ms. De Lima, back in 2000, were you married to Paul at that time?
> A.  No.
> Q.  You were just living together?
> A.  Yes.
> Q.  And he actually hit you, didn't he?
> A.  No.
> [Defense Counsel] MS. JOHNSON: Objection.
> THE COURT: Overruled.
> BY MS. ABRAMS:
> Q.  He never hit you?
> A.  No, he didn't.
> Q.  You didn't call the police about him hitting you?
> A.  No.
> Q.  Never?
> A.  No, I didn't.

V RT 857:8-25.

Defense counsel requested that the jury be instructed that there had been no report of physical abuse by Angelica De Lima against her husband Paul.  V RT 1027:3-5.  The trial court denied the motion since the jury is instructed that "questions are not evidence . . . [and] the only purpose… to consider the question, is as it gives meaning to the answer."  V RT 1029:16-19.  The trial court noted that the full names of the two individuals were different, but he observed that both went by "Paul" and they both lived in the Napa area at the time of the report.  V RT 1030: 2-8.  On this basis, the trial court found that the prosecutor did have a good faith basis for asking Ms. De Lima about the domestic violence report.  Id.  Later in trial, the court confirmed that it did not find the question was asked in bad faith, that a mistrial was unwarranted even if a higher court should determine the question to be improper, and that the matter could be "easily cured."  VII RT 1254.  During a conference on the final jury instructions, the trial court offered to provide a pinpoint cautionary instruction after the general jury instruction that questions asked by

1   lawyers are not evidence.  VIII RT at 1525-29.  However, defense counsel objected to such a

2   specific curative instruction so it was not given to the jury.  Id.

3                   2.  Improper Argument

4           Petitioner next claims that the prosecutor misstated facts in closing argument by stating

5   (1) that defense counsel had said the complaining witness had been penetrated; (2) that the

6   defense expert witness, Dr. Kania, had testified that one should do as many interviews as it takes

7   with a child victim; and (3) that no one knows how D. was hurt while living with Mr. and Mrs.

8   De Lima, when the prosecution knew or ought to have known about the Suisun Police report

9   involving physical and sexual abuse.  ECF No. 1 at 12, 25-26.[15]  The trial judge overruled defense

10  objections to the argument and found that the prosecution had made a "legitimate comment on the

11  evidence."  VIII RT 1645:16-22.

12          B.      Standard Applicable on Habeas Review

13          This court will apply a de novo standard of review because the state court denied the

14  prosecutorial misconduct claims on procedural grounds and did not adjudicate the merits.

15          C.      Legal Standard: Prosecutorial Misconduct

16          Prosecutorial misconduct does not, per se, violate a petitioner's constitutional rights.

17  Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden v. Wainwright, 477 U.S.

18  168, 181 (1986), and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Rather,

19  claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire

20  proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness

21  as to make the resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926,

22  929 (9th Cir. 1995); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Turner v

23  _____

24  [15] To the extent that petitioner argues that the prosecutor used an instruction incorrectly in an
    effort to shore up her witness's credibility after it had been impeached by a prior inconsistent

25  statement, there is nothing improper about such argument.  See ECF No. 1 at 12, 25; ECF No. 18
    at 5; see also Berger v. United States, 295 U.S. 78, 88 (1935) (explaining that a prosecutor may

26  strike hard blows but not foul ones); United States v. Tham, 665 F.2d 855, 862 (9th Cir. 1981)
    (finding proper a prosecutor's rebuttal argument speaking to a witness's motivation based on the

27  terms of a plea agreement against a defense argument that the immunized witness's motivation
    was to testify in favor of the government, not truthfully).

28

1   Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Relief is limited to cases in which the petitioner can

2   establish that prosecutorial misconduct resulted in actual prejudice.  Johnson, 63 F.3d at 930

3   (citing Brecht v. Abrahamson, 507 U.S. at 637-38; see also Darden, 477 U.S. at 181-83; Turner,

4   281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a

5   substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-

6   Sandoval, 81 F.3d 891, 899 (9th Cir. 1996).

7        D.      Analysis

8             1.  Improper Questions to Witness De Lima

9        To begin with, the court notes that a prosecutor's improper questioning, in and of itself, is

10  insufficient to warrant reversal of a conviction.  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir.

11  1998).  Here, petitioner points to a single example of an improper question by the prosecutor in a

12  month long jury trial to support his claim for relief.  Such an isolated instance of misconduct,

13  even assuming it constituted misconduct, does not rise to the level of a due process violation.

14  "Where an allegedly improper question is an isolated or one-time incident, this Court consistently

15  has refused to find a due process violation."  Ortiz, 149 F.3d at 934.  Furthermore, the

16  undersigned finds that the isolated nature of the question establishes that any error did not have a

17  substantial or injurious effect on the jury's verdict in light of the admonition given to the jury.

18  See VIII RT 1538:1-9.  Accordingly, this sub-claim should be denied.

19             2.  Improper Argument

20       The examples of improper argument cited by petitioner, considered individually or

21  cumulatively, do not rise to the level of establishing a due process violation when they are

22  considered in the context in which they were made.  Turner, 281 F.3d at 868; Sandoval v.

23  Calderon, 241 F.3d 765, 778 (9th Cir. 2001).  The first example cited by petitioner was not a

24  mischaracterization of the evidence concerning whether the victim's hymen had been penetrated

25  to support the rape count.  The prosecutor's comment was immediately followed by the statement

26  that "[w]e don't know how far it is, but we know it was sufficient to touch the hymen.  So we

27  know, according to the law, that any penetration, however slight, is penetration."  VIII RT at

28  1630.  Petitioner fails to demonstrate that this argument by the prosecutor amounts to misconduct

1   once the entire statement is taken into consideration.

2          Likewise, the second example does not amount to misconduct when it is "evaluated in

3   light of the defense argument that preceded it."  See Darden v. Wainwright, 477 U.S. at 179.  In

4   her closing argument, defense counsel relied upon Dr. Kania's testimony that suggestive

5   interview techniques were used on the children as one of the main theories of defense.  VIII RT

6   1592-1599.  Therefore, the prosecutor's comment on this testimony, and the reasonable

7   inferences that could be drawn from it, was not improper.  See United States v. Necoechea, 986

8   F.3d 1273, 1276 (9th Cir. 1993) (stating that prosecutors can argue reasonable inferences based

9   on the evidence).

10          The third example of prosecutorial misconduct concerned the children's allegations of

11   physical abuse by Paul De Lima.  Defense counsel argued in closing that these allegations against

12   Mr. De Lima were false and demonstrated that the victims were liars.  VIII RT at 1617, 1622.  In

13   rebuttal, the prosecutor stated that "there is nothing to indicate that there are false accusations

14   about Paul.  We don't know what happened" in Paul and Angelica De Lima's house.  VIII RT at

15   1655.  To the extent that petitioner is attempting to argue that this statement amounted to a

16   concession that Paul De Lima was the real abuser of the victims in this case, is not supported by

17   the record.  The allegations against Mr. De Lima that arose during petitioner's trial involved

18   physical abuse of both children and not any sexual abuse.  Furthermore, this alleged physical

19   abuse occurred years after the charged sexual abuse by petitioner.  Therefore, the prosecutor's

20   statement in closing was a reasonable comment on the defense attorney's attack on the victims'

21   credibility, and not an admission that petitioner was innocent.  For this reason, the undersigned

22   finds that there was no prosecutorial misconduct during closing argument.

23          Even when these statements are considered cumulatively, habeas relief is not warranted

24   because the prosecutor's statements cannot be found to have 'so infected the trial with unfairness

25   as to make the resulting conviction a denial of due process."  Darden, 477 U.S. at 181.

26   Accordingly, the undersigned therefore recommends that this claim be denied.

27   **VIII**.   **Ineffective Assistance of Trial Counsel**

28          A.        Petitioner's Allegations

26

1    Petitioner claims that his trial counsel rendered ineffective assistance by: (1) failing to

2   bring a petition for writ of prohibition/mandate or a new trial motion to preclude evidence

3   supporting an amended charge with a possible life sentence; (2) failing to investigate the Suisun

4   City Police Report, No. 04-3496, alleging abuse of the victim by one or both De Limas; and, (3)

5   failing to investigate the alleged recantation by petitioner's son, D.  ECF No. 1 at 17-18; ECF No.

6   18 at 9-10.

7          B.      Standard Applicable on Habeas Review

8          The first subclaim was not adjudicated on the merits in state court and therefore must be

9   accorded de novo review.  However, the last reasoned state court opinion rejecting petitioner's

10  habeas corpus application found that petitioner failed to establish a prima facie case of ineffective

11  assistance in relation to the second and third subclaims.  See ECF No. 1 at 322 (Superior Court

12  denial order) (citing People v. Duvall, 9 Cal.4th 464, 474 (1995) (discussing petitioner's "initial

13  burden of pleading adequate grounds for relief")); see also Cullen v. Pinholster, 131 S. Ct. 1388,

14  1402 n. 12 (2011) (recognizing that pursuant to Duvall, a California summary denial indicates a

15  failure to state a prima facie case).  Accordingly, the determination this court must review for

16  objective reasonableness under the AEDPA is the state court's holding that petitioner failed to

17  state a prima facie case of a constitutional violation.  See 28 U.C.C. § § 2254(d)(1); Nunes v.

18  Mueller, 350 F.3d 1045, 1054–55 (9th Cir. 2003), cert. denied, 543 U.S. 1038 (2004).

19         C.      Legal Standard: Ineffective Assistance of Counsel

20         To establish a constitutional violation based on ineffective assistance of counsel, a

21  petitioner must show (1) that counsel's representation fell below an objective standard of

22  reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

23  Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

24  adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

25  errors, the result of the proceeding would have been different.  Id. at 693–94.  The court need not

26  address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

27  prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

28  sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

The United States Supreme Court has emphasized, "[t]he  standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  <u>Richter</u>, 131 S.Ct. at 788 (internal quotations and citations omitted).  The determination to be made on federal habeas review, therefore, is not whether counsel acted reasonably, but "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard."  <u>Id.</u>

> D.     <u>Analysis</u>
>
> > 1.  <u>Subclaim #1</u>

Petitioner first faults counsel for failing to challenge the evidence supporting an amended charge at the preliminary hearing.  Specifically, petitioner contends that counsel should have filed a petition for writ of prohibition/mandate or a post-trial motion for a new trial challenging the probable cause finding.  The record, however, belies petitioner's claim.  During the preliminary hearing, defense counsel's objection and motion to strike the challenged portion of the testimony was ultimately sustained as double hearsay by the trial court.  RT of 5/17/05 at 23:28-24:2 (Preliminary Hearing Transcript).  As a result, the trial court did not predicate the aggravated assault claim on a report of what the victim said to the aunt which the aunt then reported to the authorities, i.e. the double hearsay.  The trial court, after reviewing the transcript, made clear that its finding of probable cause for violating Cal. Pen. Code § 269(a)(1) was predicated only on that portion of the testimony in which victim J. stated that her father had told her he would beat her.  RT 5/19/05 at 2:23-4:2.  Trial counsel therefore had no double hearsay basis upon which to challenge the trial court's probable cause determination.  Counsel's performance was neither deficient nor prejudicial, and the undersigned recommends denying relief on this claim.

> > 2.  <u>Subclaim #2</u>

In his second assertion of ineffectiveness, petitioner alleges that counsel failed to investigate Suisun City Police Report No. 04-3496, which purportedly described allegations of abuse of the victims by their aunt and uncle, the De Limas.  Petitioner assumes that trial counsel did nothing with respect to the allegations of abuse by the De Limas.  However, the record establishes otherwise.  During trial, counsel cross-examined the victims with respect to these

abuse allegations.  See II RT 267-287; 333-340; 343-44; 351-52.  Therefore, counsel was aware

of the information in the report and used it as part of the theory of defense.  Petitioner does not

describe how having an actual copy of the report would have changed the outcome of the trial.

Therefore, this claim is entirely conclusory.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)

(stating that "[c]onclusory allegations which are not supported by a statement of specific facts do

not warrant habeas relief.").  In this context, the state court's determination that petitioner failed

to establish a prima facie case of a Sixth Amendment violation is objectively reasonable.  See

Nunes v. Mueller, 350 F.3d at 1054–55.  The undersigned recommends denying this claim for

relief.

3.  Subclaim #3

In his third claim of ineffectiveness, petitioner faults trial counsel for not investigating his

son's alleged recantation in 2008, two years after he was convicted.  After being advised of this

information, trial counsel informed petitioner via letter that "my office can do the investigation

and then either my office or your appellate attorney can do the actual habeas petition."  ECF No.

1 at 310.  That was the last communication petitioner received from trial counsel on the subject.

Because he is prevented from directly contacting his son, petitioner concedes that he "does not

possess the necessary facts to support the claim of recantation."  Id. at 41; ECF No. 18 at 10.

Regardless of whether his son actually recanted, there is no evidence that counsel could

have conducted such an investigation prior to or during trial.  See ECF No. 1 at 322.  Simply put,

counsel was not deficient for failing to obtain evidence that did not even exist at the time of trial.

Petitioner's son testified at trial, was cross-examined, and did not recant his allegations of sexual

abuse by his father.  Therefore, the state court's conclusion that petitioner failed to establish a

prima facie case of trial counsel's ineffectiveness is not objectively unreasonable.  See Nunes v.

Mueller, 350 F.3d at 1054–55.

**IX.     Ineffective Assistance of Appellate Counsel**

A.  Petitioner's Allegations

Petitioner contends that appellate counsel was ineffective for failing to raise on appeal a

claim of cumulative error based on jury misconduct, a Brady violation, the prosecutorial

29

1    misconduct, and the trial court's abuse of discretion.  ECF No. 1 at 18, 42-43; ECF No. 18 at 10-

2    11.  In addition, petitioner faults his appellate counsel for not raising a <u>Blakely</u>[16] challenge to the

3    trial court's imposition of an aggravated term absent a jury finding.  <u>Id.</u> at 18, 43-44, referencing

4    VIII RT 1713-1714.

5          B.    <u>Standard Applicable on Habeas Review</u>

6          Based on the Solano County Superior Court's finding that these claims failed due to a lack

7    of deficient performance by counsel, these claims are subject to deferential AEDPA review.  <u>See</u>

8    ECF No. 1 at 322 (stating that petitioner "has not shown that appellate counsel's performance was

9    objectively deficient" and citing to <u>Strickland</u>).

10         C.    <u>Legal Standard</u>

11         The <u>Strickland</u> standards set forth <u>supra</u> apply to appellate counsel as well as trial counsel.

12   <u>Smith v. Murray</u>, 477 U.S. 527, 535–36 (1986); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir.

13   1989).  To prevail on a claim of ineffective assistance on appeal, a petitioner "must first show that

14   his counsel was objectively unreasonable . . . in failing to find arguable issues for appeal – that is,

15   that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising

16   them."  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) (internal citation omitted).

17         D.    <u>Analysis</u>

18         Because the claims raised in petitioner's current habeas petition fail to establish that any

19   constitutional error occurred, there cannot be any cumulative error.  <u>See</u> <u>Wood v. Ryan</u>, 693 F.3d

20   1104, 1121 (9th Cir. 2012) (finding that "Wood's assertion of cumulative error fails because his

21   individual claims of his counsel's errors at trial and sentencing are not supportable, and they do

22   not entitle him to relief even when aggregated."), <u>cert denied</u>, 134 S. Ct. 239 (2013).  Therefore,

23   appellate counsel's decision not to raise a cumulative error argument cannot fall outside the

24   bounds of reasonably competent professional assistance.  The state court's conclusion that

25   counsel was not deficient is therefore not objectively unreasonable.  <u>See</u> <u>Strickland</u>, 466 U.S. at

26   691.

27   _____

[16] <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) finding Oregon's sentencing scheme violated the
28   Sixth Amendment's jury trial guarantee).

1    With respect to appellate counsel's failure to raise a <u>Blakely/Cunningham</u>[17] challenge to

2  petitioner's sentence, the record demonstrates that this claim was not meritorious and was

3  appropriately weeded out of the appellate briefs by counsel.  <u>See</u> RT at 1721-22 (trial court's

4  finding that the upper term was appropriate for count 1); ECF No. 1 at 319 (letter from appellate

5  counsel to petitioner explaining why he was not raising this sentencing challenge).  In fact,

6  appellate counsel's decision was legally sound.  <u>See</u> <u>People v. Black</u>, 41 Cal.4th 799, 805-06

7  (2007) (holding that "imposition of an upper term sentence did not violate defendant's right to a

8  jury trial because at least one aggravating factor was established by means that satisfy the Sixth

9  Amendment); <u>see</u> <u>also</u> <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 247 (1998) (finding

10  that a prior conviction was a sentencing factor and not an element of the offense used to enhance

11  a sentence and, as a result, was not required to be found by a jury rather than a judge).  Therefore,

12  the state court's conclusion that appellate counsel's performance was not deficient is not

13  objectively unreasonable.  The undersigned recommends denying petitioner's ineffective

14  assistance of appellate counsel claims.

15  **X.**     **Admission of Victim's Pretrial Videotaped Statements**

16       A.     <u>Petitioner's Allegations</u>

17    Petitioner challenges the trial court's admission of the videotapes of interviews of victim

18  J. that were conducted in December 2004 at the Rainbow Center.  ECF No. 1 at 45.  The trial

19  court admitted these prior statements on the ground that they were inconsistent with victim J's

20  trial testimony that she could not remember specific events.  II RT at 372-376.  Because victim J.

21  testified that she could not remember making the statements at the Rainbow Center, she could not

22  be cross-examined as to the content of those statements.  Petitioner argues that the admission of

23  the prior inconsistent statements effectively precluded defense counsel any meaningful

24  opportunity to cross-examine victim J. about the charged offenses.  ECF No. 1 at 53.  Thus, he

25  contends that the trial court denied him his Sixth Amendment right to confront his accusers and

26

---

27  [17] <u>See</u> <u>Cunningham v. California</u>, 549 U.S. 270 (2007) (finding that California's determinate
   sentencing law authorizing a judge and not a jury to find facts that elevate the sentence violated
28  the Sixth Amendment).

1   his Fourteenth Amendment right to due process.  Id. at 54.

2         In support of his argument, petitioner cites to Crawford v. Washington, 541 U.S. 36

3   (2004).  ECF No. 1 at 56.  While explicitly recognizing that Crawford does not bar the use of

4   testimonial hearsay when the declarant is present at trial and subject to cross-examination, as was

5   the case here, petitioner then asserts that victim J.'s memory problems resulted in a "mental

6   infirmity" that should have precluded her from giving any testimony at all.  Id. at 56-57 (citing

7   People v. Alcala, 4 Cal.4th 742, 778-779 (1992); Cal. Evid. Code § 240(a)(3)).

8         B.      Applicable Standard on Habeas Review

9         This claim was adjudicated on the merits on direct appeal and is thus entitled to AEDPA

10   deference.

11         C.      Clearly Established Federal Law

12         Under the Sixth Amendment, a criminal defendant has the right to confront and cross-

13   examine the witnesses who testify against him.  Pennsylvania v. Ritchie, 480 U.S. 39, 51(1987).

14   "In short, the Confrontation Clause only guarantees 'an *opportunity* for effective cross-

15   examination, not cross-examination that is effective in whatever way, and to whatever extent, the

16   defense might wish.'"  Ritchie, 480 U.S. at 52-53 (quoting Delaware v. Fensterer, 474 U.S. 15, 20

17   (emphasis in original)).

18         D.      Analysis

19         The California Court of Appeal denied relief on this claim relying on Crawford v.

20   Washington, 541 U.S. 36 (2004).  See Lodged Doc. No. 3 at 9.  In Crawford, the Supreme Court

21   held that "when the declarant appears for cross-examination at trial, the Confrontation Clause

22   places no constraints at all on the use of his prior testimonial statements....  The Clause does not

23   bar admission of a statement so long as the declarant is present at trial to defend or explain it."

24   Id. at 59, n. 9.  The California Court of Appeal explained that there was no Confrontation Clause

25   violation in this case because the victim testified at trial and was subject to cross-examination by

26   defendant.  See Lodged Doc. No. 3 at 9.  The court rejected petitioner's argument that victim J.

27   "was suffering from a total memory loss that rendered her mentally infirm and so unable to give

28   testimony" because it was not supported by the record "in any way."  Id.

32

1    In this case, the undersigned finds that the state court's decision was neither contrary to

2    nor an unreasonable application of <u>Crawford</u>.  The victim testified at trial and was cross-

3    examined by defense counsel.  Therefore, there is simply no Sixth Amendment violation.  While

4    petitioner may have wished for cross-examination to have yielded more results, the constitution

5    does not require an adequate cross-examination but merely the opportunity for such.  <u>Ritchie</u>, 480

6    U.S. at 52-53.  If the court were to accept petitioner's argument, then every case in which defense

7    counsel failed to obtain a Perry Mason-style recantation or admission of guilt from the witness

8    would require a new trial under the Sixth Amendment.  Not only is such an interpretation a

9    strained reading of the Sixth Amendment, but that argument is not supported by any clearly

10   established federal law.  For these reasons, the undersigned recommends denying habeas relief on

11   this claim.[18]

12   **XI.    Abuse of Discretion**

13   Petitioner's scattershot allegations do not point to any specific constitutional violations

14   committed by the trial court.  While petitioner may be entitled to liberal construction of his

15   pleadings as a pro se party, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), that does not require this

16   court to craft his arguments for him out of whole cloth.  The Ninth Circuit Court of Appeal has

17   emphasized that "it is not our role on federal habeas review to pass upon the wisdom of a state

18   court's discretionary decisions.  It is of no moment that we may disagree with the court's reasons

19   or that we may have made different choices ourselves; 'our *only concern* when reviewing the

20   constitutionality of a state-court conviction is whether the petitioner is in custody in violation of

21   the Constitution or laws or treaties of the United States.'"  <u>Gonzalez v. Knowles</u>, 515 F.3d 1006

22   (9th Cir. 2008) (emphasis in original and internal quotations omitted) (<u>quoting</u> <u>Schell v. Witek</u>,

23   218 F.3d 1017, 1025 (9th Cir. 2000)).  This court has no authority to grant habeas relief absent

24   any constitutional violation.  <u>See</u> 28 U.S.C. § 2254(a).  Merely because petitioner disagrees with

25   

26   [18] Any errors of state law in the admission of the children's pretrial statements, as prior
     inconsistent statements or on other grounds, do not state cognizable claims for federal habeas

27   relief.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[W]e have repeatedly held that 'it is
     not the province of a federal habeas court to reexamine state-court determinations on state-law

28   questions.'").

1   the trial court's decisions does not render them unconstitutional.  In this case, the trial court's

2   actions are not subject to this court's review absent any allegation of constitutional error.

3   Accordingly, with the two exceptions noted below, this court finds that petitioner's allegations of

4   an "abuse of discretion" fail to state a cognizable claim for habeas relief and should be denied on

5   that basis.[19]

6         Construing petitioner's abuse of discretion claims liberally, the only two constitutional

7   issues raised therein are a Sixth Amendment violation based on the trial court's failure to allow

8   defense counsel adequate time to prepare to cross-examine an expert witness's qualifications and

9   a challenge to the use of CALCRIM 318 and 1192.  ECF No. 1 at 12, 16.

10         A.    Denial of Adequate Time to Prepare to Cross-Examine Rebuttal Witness

11         Turning to petitioner's first constitutional claim, the record establishes that petitioner's

12   counsel objected at least three times to proceeding with a 402 hearing concerning Dr. Urquiza's

13   qualifications as a rebuttal witness on the basis that the defense had not had enough time to

14   prepare.  See VII RT 1314-1315, 1366-1367, 1380, 1402-1403.  Petitioner argues that the failure

15   to allow more time to prepare amounts to a violation of the Sixth Amendment's Confrontation

16   Clause.  ECF No. 1 at 28.

17         Notwithstanding defense protestations of insufficient time to prepare, petitioner's trial

18   counsel engaged in a rather extensive cross-examination of Dr. Urquiza at the 402 hearing.  VII

19   RT 1381-1439; VIII RT 1445-1453.  As discussed above regarding petitioner's Crawford

20   challenge to the admission of the victim's prior statements, the Confrontation Clause guarantees

21   only "an *opportunity* for effective cross-examination, not cross-examination that is effective in

22

23   [19] To the extent that petitioner alleges as part of this claim that he was denied access to the
        victims' mental health and medical records which contained exculpatory evidence, the record
24   belies this assertion.  First and foremost, defense counsel subpoenaed these records prior to trial,
        and, following a motion to quash the subpoena, was granted access to the records that bore on the
25   victims' credibility as determined by an in camera review by the trial court.  See I. RT at 177-
        178; II RT at 390.  Second, and most importantly, these records, which were reproduced in full by
26   petitioner before this court, simply are not exculpatory.  The fact that the victims alleged that they
        were physically and sexually abused by a foster parent after being removed from petitioner's
27   custody does not establish that the allegations of sexual abuse by petitioner were false.  Moreover,
        the records themselves suggest that the allegations against Paul De Lima were not substantiated.

28

1   whatever way, and to whatever extent, the defense might wish." Ritchie, 480 U.S. at 52-53

2   (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (emphasis in original)).  Accordingly, this claim

3   should be denied.

4         B.     Challenge to CALCRIM 330, 318 and 1192

5             1. Factual Allegations

6        Here petitioner challenges the jury instructions on the testimony of a child (CALCRIM

7   330);[20] the use of prior statements as evidence (CALCRIM 318);[21] and testimony on rape trauma

8   syndrome (CALCRIM 1192).[22]  He argues that these instructions violated his Sixth Amendment

9   right of confrontation.  Petitioner contends that CalCrim 330 contains a "conclusive presumption

10   that testimony by child witnesses necessarily includes deficiencies that must be overlooked by the

11   jury." ECF No. 1 at 33-34.

12             2. Legal Standard

13        A challenge to jury instructions does not generally state a federal constitutional claim.

14   See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also, Middleton v. Cupp, 768

15   F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the

16   interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62 (1991).  It is not

---

17   [20] The jury was instructed that "You have heard testimony from two witnesses who were age 10
18   or younger.  As with any other witness, you must decide whether these children gave truthful and
    accurate testimony.  In evaluating the children['s] testimony, you should consider all of the
19   factors surrounding that testimony, including the child's age and level of cognitive development.
    When you evaluate the children['s] cognitive development, consider the children['s] ability to
20   perceive, understand, remember, and communicate.  While a child and adult witness may behave
    differently, that difference does not mean that one is any more or less believable than the other.
21   You should not discount or distrust the testimony of a witness just because he or she is a child."
    VIII RT 1548: 15-1549: 2.
22   [21] CALCRIM 318 states that: "You have heard evidence of statements that a witness made before
23   the trial.  If you decide that the witness made those statements, you may use those statements in
    two ways:  First, to evaluate whether the witness's testimony in court is believable.  And
24   secondly, as evidence that the information in those earlier statements is true."
    [22] The jury was instructed that: "You have heard testimony from Dr. Urquiza regarding Child
25   Sexual Abuse Accommodation Syndrome.  Dr. Urquiza's testimony about Child Sexual Abuse
    Accommodation Syndrome is not evidence that the defendant committed any of the crimes
26   charged against him.  You may consider this evidence only in deciding whether or not the
    conduct of Dominick Fowler and Jessica Fowler was not inconsistent with the conduct of
27   someone who has been sexually abused, and in evaluating the believability of his or her
    testimony." VIII RT at 1550.
28

1    enough that there is some "slight possibility" that the jury misapplied the instruction.  Weeks v.

2    Angelone, 528 U.S. 225, 236 [] (2000).  Rather, petitioner must demonstrate that "the ailing

3    instruction by itself so infected the entire trial that the resulting conviction violates due process,"

4    Estelle, 502 U.S. at 72.  "[N]ot every ambiguity, inconsistency, or deficiency'" in an instruction

5    constitutes a violation of due process.  Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per

6    curiam); Waddington v. Sarausad, 555 U.S. 179, 190 (2009).  It must be shown that there is "a

7    reasonable likelihood" that the jury applied the instruction in such a way that the state was

8    relieved of its burden to prove beyond a reasonable doubt every element of the crime.

9    Waddington v, Sarausad, 555 U.S. 179, 190-91 (2009).  In making this determination, the jury

10   instruction "'may not be judged in artificial isolation,' but must be considered in the context of

11   the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp v.

12   Naughten, 414 U.S. 141, 147 (1973)).  Should a constitutional error be found, habeas relief is

13   warranted only if the error had a "'substantial and injurious effect or influence in determining the

14   jury's verdict.'" Calderon v. Coleman, 525 U.S. 141, 145-47 (1998) (per curiam) (quoting Brecht

15   v. Abrahamson, 507 U.S. 619, 637 (1993).

16                      3.  Analysis

17          The predecessor to CalCrim 330, CALJIC 2.20.1, has repeatedly withstood constitutional

18   challenge in California's courts and has been found not to unduly bolster or inflate a child's

19   testimony, to usurp the jury's role in determining witness credibility, to lessen the state's burden

20   of proof, or to violate a defendant's Sixth Amendment right to confront witnesses.  People v.

21   Harlan, 222 Cal.App.3d 439, 455-457 (Cal. App. 1990); People v. Gilbert, 5 Cal.App.4th 1372,

22   1393 (Cal. App. 1992); People v. Jones, 10 Cal. App.4th 1566, 1572-73 (1992); People v.

23   McCoy, 133 Cal.App.4th 974, 978-80 (Cal. App. 2005) (rejecting the challenge as well to then-

24   new CALCRIM 330).  In petitioner's case, the jury was instructed to consider all factors and

25   characteristics of the children but not simply to distrust their testimony because they were

26   children.  Petitioner does not suggest much less demonstrate how this instruction was applied in a

27   manner that relieved the prosecution of its burden of proof.  For all these reasons, the challenge to

28   this instruction should be denied.

1    With respect to petitioner's challenge to CalCrim 318, the record shows that the jury was

2    also instructed that a defendant was presumed to be innocent; that the prosecution had the burden

3    of proving defendant guilty of each element of a crime beyond a reasonable doubt; that the jury

4    alone could judge whether the witnesses were credible or believable and could ignore any

5    evidence it determined to be untrustworthy.  RT 1537:8-12; 1540:16-1542:13; 1552:17-21;

6    1553:15-20.  In considering the challenged instruction "in the context of the instructions as a

7    whole," Estelle, supra, at 72, petitioner has not shown that the prosecution's burden of proof was

8    diminished by consideration of the out-of-court statements.

9    Lastly, petitioner's argument that CalCrim 1192 allowed the jury to make the assumption

10   that a molestation had occurred is not supported by the record.  The jury was instructed prior to

11   Dr. Urquiza's testimony that such an assumption was not permitted but instead must be found to

12   be true beyond a reasonable doubt.  See VIII RT at 1460.  In this case, the jury was amply

13   instructed that it should find guilt only if all elements of the specific crimes were proven beyond a

14   reasonable doubt.  CALCRIM 1192 makes clear that testimony about child sexual abuse

15   accommodation syndrome does not constitute evidence that petitioner molested either of his

16   children.  For this reason, the undersigned recommends denying relief.

17   **XII**.    **Ancillary Motions**

18        A.    Evidentiary Hearing Request

19   Although petitioner has not filed a motion for an evidentiary hearing, he states in his

20   petition that he believes one is required due to the "potential recantation," the alleged Brady

21   violation which petitioner contends may be directly related to the would-be recantation, and his

22   trial counsel's alleged ineffectiveness.  ECF No. 1 at 41.

23   Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an

24   evidentiary hearing must first determine whether a factual basis exists in the record to support a

25   petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v.

26   Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166

27   (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner

28   requesting an evidentiary hearing must also demonstrate that he has a "colorable claim for relief."

1  Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670).  To show that a claim is

2  "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to

3  relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation

4  omitted).

5          For the reasons described above, petitioner's claims are all based on speculation and are

6  therefore not "colorable."  Petitioner's claims regarding his son's recantation are not supported by

7  specific facts suggesting a constitutional violation.  Accordingly, an evidentiary hearing is not

8  appropriate.  With respect to petitioner's ineffective assistance of counsel claim, the court

9  concludes that no additional factual supplementation is necessary and that an evidentiary hearing

10  is not appropriate.  The facts alleged in support of these claims, even if established at a hearing,

11  would not entitle petitioner to relief.  Therefore, petitioner's request for an evidentiary hearing

12  will be denied.

13          B.          Motion for Discovery

14          Long after this matter was submitted, petitioner brought a motion for discovery.  ECF No.

15  19.  By order filed on August 19, 2013, the court granted petitioner's motion to expand the record

16  to include: (1) petitioner's recently obtained copy of California Department of Corrections and

17  Rehabilitation parole revocation documents; and, (2) a follow-up investigative report submitted

18  by a Detective Cohen to the district attorney.  The court permitted the record to be expanded

19  subject to the qualification that the records must be properly authenticated before their relevance

20  and weight was determined.  ECF No. 22.

21          C.          Motion to Compel

22          Following the court's order, petitioner filed a motion to compel discovery, pursuant to

23  Rule 6 of the Rules Governing § 2254 Cases, asking that respondent be required to produce

24  authenticated versions of these documents.  ECF No. 23.  Even assuming the records previously

25  provided by petitioner are authentic, they do not alter the court's analysis with respect to

26  petitioner's prosecutorial misconduct or ineffective assistance of counsel claims.  Therefore, the

27  court will deny petitioner's motion to compel as moot as the documents have been read and

28  considered, but fail to alter the court's analysis.

1    Accordingly, IT IS ORDERED that:

2        1.  Petitioner's request for an evidentiary hearing is denied; and,

3        2.  Petitioner's motion to compel (ECF No. 23) is denied as moot.

4    Furthermore, IT IS RECOMMENDED that petitioner's application for a writ of habeas

5    corpus (ECF No. 1) be denied without an evidentiary hearing.

6        These findings and recommendations are submitted to the United States District Judge

7    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

8    after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

11   objections, he shall also address if a certificate of appealability should issue and, if so, as to which

12   issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has

13   made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

14   certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.

15   28 U.S.C. § 2253(c)(3).  Any reply to the objections shall be served and filed within fourteen days

16   after service of the objections.  The parties are advised that failure to file objections within the

17   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

18   F.2d 1153 (9th Cir. 1991).

19   DATED: April 1, 2014

20

21   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

39